**Mark SUNIK and Tamara Sunik, Petitioner–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 01–4134.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 4, 2002.

Decided: Feb. 28, 2003.

Jay J. Freireich, Esq., Poe & Freireich, P.A., Florham Park, NJ, for Appellants.

Eileen J. O'Connor, Esq., Bruce R. Ellisen, Esq., Carol Ann Barthel, Esq., U.S. Department of Justice, Washington, DC, for Appellees.

Before: VAN GRAAFEILAND, CARDAMONE and JACOBS, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

Appellants Mark and Tamara Sunik appeal from the decision of the United States Tax Court (Wells, *J.*) holding that they owe $70,783.00 in federal income tax from 1995 and assessing in addition a penalty of $14,157.00. For the reasons set forth below, we affirm.

### Background

The facts of this case have been stipulated to by the parties and are not at issue.

On their 1995 federal income tax return, the Suniks reported $21,872.00 of taxable Schedule C income. The Internal Revenue Service subsequently examined the 1995 return. On June 15, 1998, the return examiner issued a Form 4549–CG report proposing that the Suniks pay an additional $3,195.70 based on the disallowance of certain claimed deductions.

Following the Suniks' acceptance of the terms of the 4549 report, the IRS District Director sent them a form Letter 987. The Letter 987, dated August 11, 1998, indicated that the District Director had accepted the examiner's 4549 report. It further stated, in parenthesis, "[w]e won't make further changes to your return unless we examine and change the return of a partnership, S corporation, trust, or estate in which you have an interest. Changes made to those returns could later affect your return."

Less than two weeks later, on August 24, 1998, the Suniks signed a New York State Department of Taxation and Finance ("NYSDTF") form entitled "Statement of Personal Income Tax Audit Changes." The NYSDTF form indicated that the Suniks owed an additional $29,376.03 in New York taxes and penalties due to the Suniks' failure to declare $178,034.00 in income on their 1995 state income tax return. The bottom of the NYSTDF form provided that "consent is given to the assessment/collection of the above deficiency(s) ... and the overassessment(s) is accepted as correct." Both Mark and Tamara Sunik signed directly beneath this provision.

The IRS thereafter issued to the Suniks a notice of deficiency assessing an additional $70,783.00 in federal income taxes and $14,157.00 in penalties on $178,034.00 of unreported Schedule C income. Under the section reserved for explanations, the notice read: "INFORMATION ON WHICH WE BASED OUR ADJUSTMENT WAS DERIVED FROM YOUR STATE'S TAXING AGENCY." The Suniks filed the instant action in the United States Tax Court seeking a redetermination of the deficiency. Following a bench trial, Judge Wells, on July 30, 2001, issued

a decision upholding the deficiency assessment.

The Suniks now claim the Tax Court erred in ruling that the Letter 987 did not constitute a closing agreement settling their 1995 federal tax return. They also argue that the court below erred both in finding that the Commissioner made a sufficient determination of the deficiency, and in disallowing certain witness testimony.

### Discussion

■■■ We review the Tax Court's conclusions of law *de novo. Cinema '84 v. Comm'r,* 294 F.3d 432, 435 (2d Cir.2002). The Tax Court's application of its own procedural rules is reviewed for abuse of discretion. *Moretti v. Comm'r,* 77 F.3d 637, 642 (2d Cir.1996). Internal Revenue Code § 7121 authorizes the Secretary of the Treasury, or his designee, "to enter into an agreement in writing with any person relating to the liability of such person . . . in respect of any internal revenue tax for any taxable period." I.R.C. § 7121(a). A closing agreement "shall be final and conclusive, and, except upon a showing of fraud or malfeasance, . . . the case shall not be reopened as to the matters agreed upon . . . ." I.R.C. § 7121(b)(1).

■■ The Suniks contend that the Letter 987 functioned as a closing agreement. To their credit, reading the Letter does leave one with the clear impression that no further changes would be made to the 1995 return by the IRS absent specified contingencies, none of which came to pass. However, regulations promulgated under I.R.C. § 7121 require closing agreements to be executed on forms prescribed by the IRS. *See* Treas. Reg. § 301.7121–1(d)(1)(26 C.F.R. 301.7121–1(d)(1)); Rev. Proc. 68–16, § 6, 1968–1 C.B. 770, 777–78. Letter 987 is not among the prescribed forms. *See Zaentz v. Comm'r,* 90 T.C. 753, 760–61, 1988 WL 34876 (1988). We

therefore hold that, while the Letter 987 may have been misleading, it did not constitute a closing agreement precluding the IRS from further modifying the Suniks' 1995 federal income tax return.

■ As their second line of defense, the Suniks, relying heavily on *Scar v. Comm'r,* 814 F.2d 1363 (9th Cir.1987), argue that the Commissioner failed to "determine" the deficiency at issue as required by I.R.C. § 6212(a). In *Scar,* the Ninth Circuit concluded that "the Commissioner must consider information that relates to a particular taxpayer before it can be said that the Commissioner has 'determined' a 'deficiency' in respect to that taxpayer." *Id.* at 1368. The Suniks claim that the Commissioner impermissibly failed to consider information relating to them as particular taxpayers in determining their deficiency. In the alternative, they argue that the determination was "naked," and that the burden of proof as to the correctness of the deficiency therefore shifted to the Commissioner. *See Helvering v. Taylor,* 293 U.S. 507, 515–16, 55 S.Ct. 287, 79 L.Ed. 623 (1935) (shifting burden of proof to Commissioner when determination shown to be "arbitrary and excessive").

We are not persuaded. Although the IRS apparently relied exclusively upon information provided by the NYSDTF form in determining the deficiency, the Suniks themselves stipulated on that form that the New York "overassessment(s) is accepted as correct." The determination therefore was particular to the Suniks and cannot reasonably be considered arbitrary and excessive.

■ Lastly, we find that the Tax Court did not abuse its discretion in refusing to allow Harvey R. Poe, Esq., one of the Suniks' attorneys, to testify at trial because he was not timely identified as a witness in compliance with the court's pre-

trial order. Tax Court Rule 131(b) allows judges to issue pretrial orders, and provides that "[u]nexcused failure to comply with any such order may subject a party or party's counsel to sanctions." The court's pretrial order provided that "[w]itnesses who are not identified [15 days before trial] will not be permitted to testify at the trial without leave of the Court upon a sufficient showing of cause." Mr. Poe was not identified as a witness until four days before trial, and the Suniks apparently offered no showing of good cause.

### Conclusion

AFFIRMED in all respects.