T.C. Memo. 2008-38

UNITED STATES TAX COURT

CLAUDE E. AND DANA L. SALAZAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CLAUDE E. SALAZAR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 2203-05L, 23547-06L.   Filed February 25, 2008.

<u>Jeremy H. Speich</u> and <u>Dana L. Salazar</u>, for petitioners.

<u>Diana P. Hinton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  These consolidated cases arise from petitions
for judicial review of two notices of determination concerning

collection action(s) under section 6320 and/or 6330.[1]  In response to a notice of intent to levy issued by respondent with respect to outstanding income tax liabilities, petitioners Claude and Dana Salazar (Mr. and Mrs. Salazar) submitted an offer-in-compromise for all of their outstanding tax liabilities, which also included employment tax liabilities of Mr. Salazar. Petitioners also sought abatement of penalties for the period their bankruptcy petition was pending.  After Mr. Salazar individually received a notice of intent to levy with respect to his employment tax liabilities, Mr. Salazar submitted a second offer-in-compromise and again challenged the assessment of penalties and interest during the pendency of petitioners' bankruptcy petition.  Respondent issued separate notices of determination rejecting both offers-in-compromise and sustaining the proposed collection actions.

We have jurisdiction to review respondent's collection determination relating to the employment tax liabilities as well as the income tax liabilities under amended section 6330(d)(1) because respondent made his determination more than 60 days after August 17, 2006.  See Callahan v. Commissioner, 130 T.C. __ (2008).  Respondent has now admitted to assessing a penalty erroneously for petitioners' 1997 income tax year while their

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

bankruptcy petition was pending and has agreed to correct this error.  Because we find respondent did not abuse his discretion in rejecting petitioners' offers-in-compromise, and because we find that respondent did not otherwise erroneously assess penalties and interest, we sustain respondent's determinations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts and related exhibits are incorporated herein by this reference.  At the time the petitions were filed, petitioners, husband and wife, resided in New York.

Previously, petitioners were residents of Nevada, where they owned and operated a retail art gallery named Artistic Nature. While operated by both petitioners, the gallery was organized as a sole proprietorship in the name of Mr. Salazar.  The operation, and ultimately the failure, of Artistic Nature has led to the current proceedings.  Respondent seeks collection of petitioners' outstanding Federal income taxes, penalties, and interest for taxable years 1997, 1998, and 1999.  Respondent also seeks to collect the outstanding employment tax liabilities of Mr. Salazar related to Artistic Nature from 1998 through 2001.

On January 23, 2001, when Artistic Nature was failing, petitioners filed for chapter 13 bankruptcy protection in the U.S. Bankruptcy Court for the District of Nevada.  Petitioners captioned their bankruptcy petition as "Claude E. Salazar dba

Artistic Nature and Dana Salazar dba Artistic Nature." The petition was later converted to a chapter 7 proceeding.

On February 1, 2001, respondent filed a proof of claim with the bankruptcy court, which respondent later amended. On respondent's last amendment to the proof of claim, filed on September 27, 2003, respondent listed a secured claim of $19,915.40, an unsecured priority claim of $43,673.45, and an unsecured general claim of $8,850.74. The secured claim related to a lien respondent had previously filed with respect to petitioners' 1997 and 1998 income tax liabilities, and it included penalties and interest. The unsecured priority claim also included interest. Petitioners, while represented by counsel, did not file an objection to respondent's claims. On July 25, 2002, petitioners received a discharge of debtor from all dischargeable debts. On August 22, 2005, the bankruptcy trustee disbursed $17,834.51 to respondent. The bankruptcy case was closed on March 30, 2006.

During the 2000, 2001, and 2002 tax years, petitioners allowed withholdings from income to exceed their income tax liabilities, which created overpayments totaling $15,814.91. On October 2, 2003, respondent applied these overpayments to petitioners' 1997 income tax liabilities. On October 6, 2003, respondent assessed $3,192.34 in interest and an additional

$1,216.52 failure to file penalty for petitioners' taxable period ending December 31, 1997.

After petitioners received the discharge of debtor, respondent initiated collection on petitioners' liabilities. On October 27, 2003, respondent sent petitioners a separate letter for each of the outstanding liabilities stating that he intended to seek collection by levy. Respondent's notification of intent to levy indicated the following liabilities, including penalties and interest:

| Tax From Form | Period Ending | Unpaid Balance |
| --- | --- | --- |
| 1040 | 12/31/1997 | $437.21 |
| 1040 | 12/31/1998 | 5,923.33 |
| 1040 | 12/31/1999 | 6,923.71 |
| 941 | 12/31/1998 | 3,970.30 |
| 941 | 3/31/1998 | 6,248.92 |
| 941 | 6/30/1999 | 5,658.56 |
| 941 | 9/30/1999 | 7,000.45 |
| 941 | 12/31/1999 | 6,122.27 |
| 941 | 3/31/2000 | 5,006.08 |
| 941 | 6/30/2000 | 5,626.37 |
| 941 | 9/30/2000 | 6,575.15 |
| 941 | 12/31/2000 | 5,855.57 |
| 941 | 3/31/2001 | 5,118.99 |
| 941 | 6/30/2001 | 2,210.01 |

On or about December 6, 2003, respondent issued a final notice of intent to levy related to the income tax liabilities for 1997, 1998, and 1999.  Respondent's notice of intent to levy did not include Mr. Salazar's employment tax liabilities.  On December 16, 2003, petitioners submitted a Form 12153, Request for a Collection Due Process Hearing.  Notwithstanding the fact the final notice of intent to levy pertained only to petitioners' income tax liabilities, petitioners indicated they were seeking collection review with respect to both their income and employment tax liabilities.  Petitioners stated:  "We declared Chapter 7 bankruptcy in January 2001.  Discharge was July 2001 [sic]--there were assets--the bankruptcy is still open pending filing of final accounting report by the trustee.  Calls to IRS and IRS bankruptcy Department have gone unanswered."  Despite the request for a collection review hearing, respondent issued the levy.  Upon realizing that he should have suspended the proposed levy action until after the hearing and any appeals, respondent released the levy.  See sec. 6330(e)(1); Grover v. Commissioner, T.C. Memo. 2007-176.

Petitioners' file was forwarded to Appeals Settlement Officer Bruce Conte.  On May 14, 2004, Mr. Conte contacted petitioners to schedule a conference.  At the same time, Mr. Conte contacted respondent's internal bankruptcy specialists.  Mr. Conte received a fax from a specialist outlining petitioners'

bankruptcy file and noting that "secured claims get paid first and then priority." Mr. Conte noted in his case record that there were also outstanding employment tax liabilities for petitioners and that final collection notices had not yet been issued with respect to those liabilities.

On or about May 24, 2004, petitioners submitted a completed Form 656, Offer in Compromise, to respondent seeking to resolve their outstanding employment and income tax liabilities for $9,024.25, to be paid within 90 days from notice of acceptance of the offer. Upon receipt of the offer-in-compromise, Mr. Conte contacted petitioners to seek additional financial information. Over the course of several months, Mr. Conte and petitioners corresponded on multiple occasions with respect to additional documents Mr. Conte needed in evaluating petitioners' offer-in-compromise. In one letter to Mr. Conte dated August 13, 2004, petitioners requested that "given that the Bankruptcy Court has failed to render a final accounting to date, the penalties attributable to the principal balance outstanding should be waived."

While he was attempting to obtain additional information about petitioners' economic situation, Mr. Conte was also attempting to determine what amount would be paid to respondent from petitioners' bankruptcy estate. Mr. Conte contacted respondent's internal bankruptcy specialists on numerous

occasions. Following one such contact, Mr. Conte received an e-mail informing him that "Mr. Salazar owes: IMF $13,977.92 and BMF $62,786.01 for a total of $76,763.93. The amount that will come to IRS from the trustee's office * * * [$25,000 less trustee expenses] will not full-pay the account (less than 1/3 of balance due). Collection will not be withheld."[2]

According to his case record, Mr. Conte was concerned that accepting an offer-in-compromise while awaiting a final distribution from the bankruptcy might jeopardize respondent's claims to that distribution. Mr. Conte performed research, including reviewing the Internal Revenue Manual (IRM), to assist with his consideration of petitioners' offer-in-compromise. Mr. Conte noted the IRM's caution on accepting an offer-in-compromise while awaiting a distribution of assets from a bankruptcy. Mr. Conte also sought and received legal advice on the effect an offer-in-compromise would have on the pending bankruptcy distribution. Counsel from within the Internal Revenue Service (IRS) advised Mr. Conte that acceptance of the offer-in-compromise risked respondent's claim to the distribution and that the offer-in-compromise should be increased by the amount respondent expected to receive from the bankruptcy.

---

[2]"IMF" refers to respondent's Individual Master File for petitioners' income tax liabilities. "BMF" refers to respondent's Business Master File for Mr. Salazar's employment tax liabilities.

After receiving counsel's advice, on November 8, 2004, Mr. Conte sent petitioners a letter informing them that--

> I have received guidance from our Counsel regarding the acceptance of an Offer in Compromise in an instance where the distribution of the assets of the bankruptcy has not been completed. This, as you may recall, was the primary issue surrounding your * * * request for an offer.
>
> It is Counsel's opinion, as it is mine, that if the Service were to accept an offer in this instance, the Service would at that point no longer have a claim to any distribution of the bankruptcy proceeds.
>
> It is also our opinion that the only way that an offer could be accepted under these circumstances, is for the Service to attempt to determine how much of the distribution we would be entitled to and add that to the amount of the offer.

Mr. Conte went on to reason that respondent would likely receive approximately $20,000 from the pending distribution. Accordingly, Mr. Conte informed petitioners that their offer-in-compromise would have to be increased by $20,000 before it could be accepted.

By letter dated November 22, 2004, petitioners responded that they could not pay the estimated $20,000 to respondent that was pending distribution without first receiving the distribution. As an alternative, petitioners offered to relinquish any rights they might have to the distribution for the benefit of respondent. Mr. Conte determined that this offer-in-compromise still risked respondent's forthcoming distribution and thus could not be accepted before receipt of the distribution

from the bankruptcy estate.  As part of his analysis in his closing memorandum, Mr. Conte noted that if the offer-in-compromise were accepted, any funds remaining after the bankruptcy trustee discharged petitioners' debts would go to other creditors or to petitioners.  Mr. Conte concluded:  "Based upon informal advice from Counsel and the taxpayer's response, it is Appeals' decision to reject the offer-in-compromise of $9,024.25 as insufficient due to the fact that a larger amount appears to be collectible."

On January 4, 2005, respondent's Appeals Office issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the proposed levy action with respect to petitioners' 1997, 1998, and 1999 income tax liabilities.  In a separate letter addressed only to Mr. Salazar, Mr. Conte indicated that the offer-in-compromise had also been rejected with respect to his outstanding employment tax liabilities.

On February 3, 2005, petitioners filed a petition with this Court seeking review of respondent's determination under docket No. 2203-05L.  Petitioners allege that respondent's rejection of their offer to compromise both their outstanding income tax liabilities and Mr. Salazar's employment tax liabilities was an abuse of discretion.  Petitioners' petition for docket No. 2203-

05L did not seek to challenge the underlying income tax liabilities that respondent was seeking to collect.

Respondent moved to dismiss for lack of jurisdiction as to Mr. Salazar's employment tax liabilities on the grounds that respondent had never issued a notice of determination concerning a collection action under section 6330 with respect to the employment tax liabilities. In a Salazar v. Commissioner, T.C. Memo. 2006-7, filed January 18, 2006, we found that no notice of determination for purposes of section 6330 had been issued with respect to petitioners' employment tax liabilities and granted respondent's motion to dismiss for lack of jurisdiction with respect to Mr. Salazar's employment tax liabilities.[3]

In the interim, on June 20, 2005, the bankruptcy trustee submitted to the bankruptcy court a Trustee's Final Report and Application for Compensation and Reimbursement (the final report). In the final report, payment on respondent's secured claim of $19,915.40 was not allowed. Instead, payment on respondent's priority claim of $43,673.45 was allowed. On August 22, 2005, the bankruptcy trustee disbursed $17,834.51 to respondent.

---

[3]Respondent also moved to dismiss on the grounds that the Court lacked jurisdiction to hear any challenge to Mr. Salazar's employment tax liabilities. However, because respondent issued a notice of determination with respect to Mr. Salazar's employment tax liabilities on Oct. 18, 2006, respondent admits that we now have jurisdiction to review his determination under sec. 6330(d)(1). See Callahan v. Commissioner, 130 T.C. __ (2008).

On August 25, 2005, respondent applied the proceeds of the bankruptcy distribution to Mr. Salazar's outstanding employment tax liabilities for the taxable periods ending December 31, 1998, March 31, 1999, and June 30, 1999.  However, the amounts that respondent applied to these taxable periods exceeded the priority claims for those periods.  On April 24, 2007, respondent adjusted the application of the bankruptcy proceeds to also include partial payments for the taxable periods ending September 30, 1999, as well as December 31, 1999.

As of June 30, 2005, Mr. Salazar still had unpaid employment tax liabilities that included:

| Period Ending | Unpaid Balance |
| --- | --- |
| 12/31/98 | $2,636.81 |
| 3/31/99 | 5,281.02 |
| 6/30/99 | 4,067.44 |
| 9/30/99 | 5,904.60 |
| 12/31/99 | 5,158.55 |
| 3/31/00 | 4,219.10 |
| 6/30/00 | 4,729.82 |
| 9/30/00 | 5,522.11 |
| 12/31/00 | 4,670.33 |
| 3/31/01 | 4,097.97 |
| 6/30/01 | 1,752.20 |

On February 22, 2006, respondent issued a Final Notice of Intent to Levy and Notice of Your Right to a Hearing with respect to Mr. Salazar's employment tax liabilities.[4]  In response, Mr. Salazar submitted a second Form 12153 with respect to the proposed collection action on the employment tax liabilities. The new request for collection review was assigned to Appeals Settlement Officer Thomas Conley.  In his initial correspondence with Mr. Conley, Mr. Salazar indicated that he did not intend to submit a new offer-in-compromise but instead sought reconsideration of petitioners' original offer-in-compromise of $9,024.25.  Mr. Salazar also attempted to challenge the assessment of penalties and interest during the pendency of petitioners' bankruptcy as well as the manner in which respondent applied the bankruptcy proceeds.

On May 17, 2006, petitioners had an in-person hearing with Mr. Conley.  On June 20, 2006, Mr. Salazar submitted a new offer-in-compromise.  The basis of the new offer-in-compromise was again doubt as to collectibility, and the new offer included updated financial information.  Mr. Salazar offered to compromise petitioners' then-outstanding income and employment tax liabilities for $19,547.13.  By this time, Mrs. Salazar was working as an attorney and Mr. Salazar as a manager of a

---

[4] Respondent's notice of intent to levy did not include the periods ending Dec. 31, 1998, or Mar. 31, 1999.

restaurant.  Mr. Salazar had also begun collecting monthly Social Security benefits.  Mr. Conley determined that petitioners' reasonable collection potential exceeded the outstanding liabilities and thus rejected the offer-in-compromise.  Mr. Conley's determination did not, however, address Mr. Salazar's claims that respondent was seeking to collect penalties and interest assessed for the period while petitioners' bankruptcy petition was pending.

On October 18, 2006, respondent issued a Notice of Determination and Collection Action Under Section 6320 and/or 6330 to Mr. Salazar regarding his employment tax liabilities.  Mr. Salazar then filed a second petition to this Court claiming error in respondent's determination to proceed with collection in the case at docket No. 23547-06L.  The second petition does not allege any error with respect to respondent's rejection of Mr. Salazar's second offer-in-compromise.  Instead, Mr. Salazar again alleges that respondent abused his discretion in failing to revisit and accept petitioners' original 2004 offer-in-compromise.  Mr. Salazar also alleges error by respondent in not abating the penalties and interest assessed for the period while petitioners' bankruptcy petition was pending.  Finally, Mr. Salazar alleges that it was an error for respondent to apply the bankruptcy proceeds to his individual employment tax liabilities instead of petitioners' joint income tax liabilities.  The two

petitions have been consolidated for trial, briefing, and opinion.

OPINION

I.   Introduction

While this matter has developed in a manner that has made it more complicated than necessary, in the end it is a collection review case in which petitioners principally sought to resolve their outstanding income and employment tax liabilities through an offer-in-compromise.  Petitioners offered to settle all of their outstanding liabilities, including the income tax liabilities and the employment tax liabilities, for $9,024.25.  Respondent rejected the offer-in-compromise because he was likely to receive more from the petitioners' pending bankruptcy.  Petitioners want the Court to determine that respondent's rejection was an abuse of discretion and that respondent be compelled to accept the offer-in-compromise with respect to both the income taxes and the employment taxes.  We find that respondent did not abuse his discretion.

Section 6330 provides that no levy may be made on any property or right to property of a person unless the Secretary first notifies him in writing of the right to a hearing before the Appeals Office.  At the hearing, the taxpayer may raise any relevant issues relating to the unpaid tax or the proposed levy, including appropriate spousal defenses, challenges to the

appropriateness of collection actions, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may contest the existence or amount of the underlying tax liability if the taxpayer failed to receive a notice of deficiency for the tax liability in question or did not otherwise have an earlier opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, the Appeals Office must make a determination whether the Secretary may proceed with the proposed collection action. We have jurisdiction to review the Appeals officer's determination. Sec. 6330(d)(1). Where the underlying tax liability is properly at issue, we review that determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the underlying tax liability is not at issue, we review the determination for an abuse of discretion. Id. at 182.

## II. Offers-in-Compromise

Petitioners first seek to compel respondent's acceptance of their offer-in-compromise. Petitioners suggest that the failure to accept their original offer-in-compromise was an abuse of discretion.

We do not conduct an independent review of what would be an acceptable offer-in-compromise. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006); Fowler v. Commissioner, T.C. Memo. 2004-163. The extent of our review is

to determine whether the Appeals officer's decision to reject the taxpayer's offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law. Skrizowski v. Commissioner, T.C. Memo. 2004-229; Fowler v. Commissioner, supra.

Section 7122(a) authorizes the Commissioner to compromise any civil or criminal case arising under the internal revenue laws. See Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006) (noting that the authorization to compromise any civil or criminal case is discretionary), affg. T.C. Memo. 2004-13. Section 7122(c) provides that the Commissioner shall prescribe guidelines for evaluation of whether an offer-in-compromise should be accepted. See sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The section 7122 regulations set forth grounds for the compromise of a taxpayer's liability, including doubt as to collectibility. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under the Commissioner's administrative pronouncements, an offer to compromise based on doubt as to collectibility will be acceptable only if it reflects the reasonable collection potential of the case; i.e., that amount, less than the full liability, that the IRS could collect through

means such as administrative and judicial collection remedies. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. The offer-in-compromise must include all unpaid tax liabilities and periods for which the taxpayer is liable. 1 Administration, IRM (CCH), pt. 5.8.1.7, at 16,256.

If an offer-in-compromise is submitted where a taxpayer has also filed a bankruptcy petition, the Commissioner cautions against acceptance of the offer-in-compromise in the window between a taxpayer's discharge in bankruptcy and the time the final distribution is made because "it is uncertain whether the Service would still have a valid claim in bankruptcy if an offer is accepted." 1 Administration, IRM (CCH), pt. 5.8.10.2.3(2), at 16,368. Thus, the Internal Revenue Manual guidelines advise that "the amount acceptable for an offer should include the amount we reasonably expect to recover from the bankruptcy in addition to what can be collected from the taxpayer on non-discharged liabilities or from property outside the bankruptcy." Id.

It is clear from the administrative record that Mr. Conte was concerned that accepting petitioners' $9,024.25 offer-in-compromise would risk respondent's expected distribution from the bankruptcy. Mr. Conte had extended contact with respondent's bankruptcy specialists. He also performed his own research, including reviewing the IRM guidelines. Mr. Conte sought to determine the likely amount respondent would receive from the

bankruptcy and the effect accepting a compromise would have on respondent's distribution. Ultimately, Mr. Conte concluded that respondent was likely to receive approximately $20,000 of the $25,000 remaining in the bankruptcy. Further, as advised by counsel, Mr. Conte concluded that accepting the offer-in-compromise risked respondent's claims in the bankruptcy estate. Thus, in accordance with the IRM and advice from counsel, Mr. Conte determined that petitioners' offer-in-compromise was inadequate because it was less than what respondent expected to receive from the bankruptcy trustee and because accepting that offer would place that distribution at risk.

Petitioners argue that respondent's rejection of the offer-in-compromise was based on an erroneous conclusion of law that the bankruptcy distribution was at risk. Petitioners argue that respondent's distribution from the bankruptcy was never at risk. If respondent's determination was based upon an erroneous conclusion of law, we must reject that view and find that respondent abused his discretion. See Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

As respondent's counsel now explains, an offer-in-compromise must include all of the outstanding liabilities of the taxpayer. Further, section 6325(a) provides that the Commissioner "shall issue a certificate of release of any lien imposed with respect to any internal revenue tax" not later than 30 days after the

liability for the amount has been fully satisfied. Thus respondent argues, if respondent were to accept an offer-in-compromise and the liabilities were thereby fully satisfied, he would jeopardize any secured claim to the bankruptcy distribution. Accordingly, as respondent's counsel argues, an offer-in-compromise will not be accepted while a bankruptcy is pending if the offer is less than the amount he reasonably stands to receive when the bankruptcy distribution occurs.

We believe, however, that respondent's risk, or at least his perceived risk, goes beyond simply the release of any secured claim he has to the bankruptcy distribution. If an offer-in-compromise must include all of the outstanding liabilities of the taxpayer, then acceptance and satisfaction of the offer would risk, if not extinguish, all claims the Commissioner had to the bankruptcy assets. The administrative record suggests it was this more generalized risk, to all of respondent's claims, that concerned Mr. Conte in evaluating petitioners' offer-in-compromise. Nonetheless, petitioners fail to point to any authority to suggest that respondent's position that accepting an offer-in-compromise jeopardized the bankruptcy distribution was without legal basis, and the Court knows of none.

In furtherance of their argument that the bankruptcy distribution was not at risk, petitioners highlight their offer to relinquish any claim to the bankruptcy distribution for the

benefit of respondent.  While this offer would have reduced the risk that petitioners would receive a windfall from the bankruptcy by virtue of the offer-in-compromise, it did nothing to reduce respondent's risk with respect to other creditors.  As Mr. Conte explained in his closing memorandum:  if the offer-in-compromise were accepted, any remaining funds in the bankruptcy "would go to other creditors or to the taxpayer."  Petitioners again fail to present any authority to suggest that their other creditors would be precluded from objecting to any distribution to respondent after the acceptance of their offer-in-compromise.

Petitioners make two additional arguments on why respondent's determination was an abuse of discretion.  First, petitioners suggest that respondent was announcing a bright-line rule and did not exercise discretion at all.  Second, petitioners argue that respondent abused his discretion because he rejected the offer-in-compromise solely on the basis of the amount offered in contravention of section 7122(d)(3).  We address each in turn.

Petitioners first take issue with Mr. Conte's requirement that their offer-in-compromise be increased by the amount of the expected distribution from the bankruptcy.  The IRM guidelines instruct that an acceptable offer-in-compromise would have to include the amount that respondent expected to receive from the bankruptcy in addition to what respondent could collect from petitioners directly.  Petitioners argue that by relying upon

this provision of the IRM, the Appeals officer was not exercising discretion at all but instead enunciating a bright-line rule for all postdischarge bankruptcy cases where the Commissioner is waiting for a distribution. See Estate of Roski v. Commissioner, 128 T.C. 113 (2007) (holding that by requiring all estates to post a bond to make a section 6166 election regardless of the facts before him, the Commissioner was adopting a bright-line policy that trumped the exercise of his discretion).

Mr. Conte's use of the IRM was not, however, a de facto enunciation of a bright-line rule that trumped the exercise of discretion. In evaluating an offer-in-compromise under doubt as to collectibility, the Commissioner must first determine the reasonable collection potential on the amount owed. Rev. Proc. 2003-71, sec. 4.02(2). In the ordinary circumstance, the Commissioner calculates the reasonable collection potential by determining the excess of a taxpayer's assets and future income above certain allowances for basic living expenses. See Klein v. Commissioner, T.C. Memo. 2007-325. The guidelines aid the Commissioner in this endeavor. Id.; see also, e.g., McDonough v. Commissioner, T.C. Memo. 2006-234; Etkin v. Commissioner, T.C. Memo. 2005-245; Schulman v. Commissioner, T.C. Memo. 2002-129. A pending bankruptcy petition changes this collection analysis because the taxpayer has surrendered his assets to the bankruptcy court. Thus, where a taxpayer has filed for bankruptcy, the

Commissioner stands to collect as a creditor in the bankruptcy proceeding in addition to possibly collecting from the taxpayer directly from future income and assets not subject to the bankruptcy.

Thus, at first, the IRM instructs a settlement officer to consider the Commissioner's standing as a creditor in the bankruptcy and advises that an acceptable offer-in-compromise include the amount the Commissioner reasonably expects to recover from the bankruptcy. 1 Administration, IRM (CCH), pt. 5.8.10.2.3(2). In other words, the Appeals officer should not accept an offer of $5 when doing so will risk the likely receipt of $10 down the road. Second, the IRM instructs that an acceptable offer-in-compromise should also include the amount that "can be collected from the taxpayer on non-discharged liabilities or from property outside the bankruptcy." Id. Thus, if the Commissioner stands to receive $10 as a creditor in the bankruptcy and, in addition, $5 can be collected directly from the taxpayer, then the reasonable collection potential is not $5 or even $10, but more like $15.

Mr. Conte did not have to reach the second part of this analysis--the amount respondent could collect from petitioners outside of the bankruptcy. The $9,024.25 offer-in-compromise from petitioners was less than the $20,000 Mr. Conte expected respondent would receive from the bankruptcy, and he determined

that acceptance of the offer would risk the receipt of that $20,000. We find that Mr. Conte was not enunciating a bright-line rule for all cases. Mr. Conte was simply applying respondent's guidelines on evaluating offers-in-compromise, including the reasonable collection potential, to the specifics of petitioners' offer.

Finally, petitioners argue that respondent abused his discretion by rejecting petitioners' offer-in-compromise solely on the basis of the amount offered. Section 7122(d)(3)(A) provides: "an officer or employee of the Internal Revenue Service shall not reject an offer-in-compromise from a low-income taxpayer solely on the basis of the amount of the offer". The regulations expand on this by stating that "No offer to compromise may be rejected solely on the basis of the amount of the offer without evaluating that offer under the provisions of this section and the Secretary's policies and procedures regarding the compromise of cases." Sec. 301.7122-1(f)(3), Proced. & Admin. Regs.

The administrative record makes clear that Mr. Conte did not reject petitioners' offer-in-compromise solely on the basis of the amount offered, $9,024.25. Mr. Conte used respondent's policies and procedures--the guidelines of the IRM as well as advice received from counsel--to evaluate the specifics of petitioners' offer in the light of what respondent could

reasonably expect to collect on petitioners' liabilities. Mr. Conte concluded that respondent was likely to receive more in the distribution from the bankruptcy than from petitioners' offer-in-compromise. Further, Mr. Conte determined that accepting petitioners' offer would risk this expected greater distribution. We find petitioners' offer-in-compromise was not rejected solely on the basis of the amount offered.

We are not unsympathetic to petitioners' situation as they ultimately had no control over when any distribution from the bankruptcy would be made. Since then, petitioners' financial outlook has improved dramatically. Mr. Salazar is now employed as a manager of a restaurant and has begun receiving Social Security benefits. Mrs. Salazar completed law school and now works as an attorney. Thus, while the $9,024.25 offer-in-compromise may have been the limit of what petitioners could pay in 2004, when Mr. Salazar submitted a second offer-in-compromise during the second collection review hearing with respect to his employment tax liabilities, respondent determined that Mr. Salazar was then in a position to pay the entirety of his outstanding employment tax liabilities. Petitioners have not presented any argument or evidence to the Court to suggest that respondent's rejection of this second offer-in-compromise was an abuse of discretion.

In sum, we find that respondent did not abuse his discretion in rejecting petitioners' offers-in-compromise.

III. Underlying Liability

To the extent the Court does not compel respondent to accept their original offer-in-compromise, petitioners argue in the alternative that respondent's assessment of penalties and interest while their bankruptcy petition was pending was erroneous. Petitioners also argue that respondent erroneously applied the bankruptcy proceeds to the individual employment tax liabilities of Claude Salazar instead of their joint income tax liabilities.

In a collection review proceeding, a taxpayer may raise challenges to the existence or amount of the underlying liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute the underlying liability. Sec. 6330(c)(2)(B). Where a taxpayer has filed a bankruptcy action, and the Commissioner has submitted a proof of claim for unpaid Federal tax liabilities in a taxpayer's bankruptcy action, we have held that the taxpayer has had the opportunity to dispute the liabilities for purposes of section 6330(c)(2)(B). See Kendricks v. Commissioner, 124 T.C. 69 (2005); Sabath v. Commissioner, T.C. Memo. 2005-222. A bankruptcy court may consider the amount or legality of taxes, including penalties and

interest. 11 U.S.C. sec. 505(a) (2000); Sabath v. Commissioner, supra.

In petitioners' bankruptcy proceeding, respondent submitted a proof of claim for petitioners' unpaid income tax and employment tax liabilities, including penalties and interest. Petitioners, while represented by counsel, did not file an objection to these tax liabilities. Accordingly, petitioners are precluded from challenging their underlying liabilities, including the penalties and interest. However, even if petitioners had raised the issue of whether respondent's assessment of penalties and interest during their bankruptcy proceeding was erroneous, to the extent that respondent has not conceded this issue, we would sustain his assessment of penalties and interest.

Section 6658(a) provides that "No addition to the tax shall be made under section 6651, 6654, or 6655 for failure to make timely payment of tax with respect to a period during which a case is pending under title 11 of the United States Code". Petitioners' bankruptcy was pending from the date they filed their petition until their case was closed on March 30, 2006. See Rev. Rul. 2005-9, 2005-1 C.B. 470.

Respondent admits having erroneously assessed a failure to pay penalty with respect to petitioners' 1997 income tax account on October 23, 2003, while petitioners' bankruptcy was pending.

Respondent has agreed to correct this error. Petitioners did not present any evidence that respondent assessed penalties for their 1998 and 1999 income tax liabilities while their bankruptcy petition was pending. Further, a review of petitioners' income tax account transcripts for 1998 and 1999 confirms that respondent did not assess any additional penalty during the pendency of their bankruptcy.

With respect to the employment tax liabilities for Mr. Salazar under docket No. 23547-06L, petitioners again argue that additions to tax were sought for the period their bankruptcy was pending. However, section 6658 does not prevent respondent from assessing the additions to tax during the pendency of the bankruptcy related to employment taxes to the extent that they are withheld or collected from others. Sec. 6658(b); Kiesner v. IRS, 194 Bankr. 452, 458 (Bankr. E.D. Wis. 1996); see also S. Rept. 96-1035, at 51 (1980), 1980-2 C.B. 620, 646 ("These relief rules do not, however, apply with respect to liability for penalties for failure to timely pay or deposit any employment tax required to be withheld by the debtor or trustee."). Accordingly, we find no basis to suggest that the employment tax liabilities respondent seeks to collect include any erroneously assessed additions to tax.

Petitioners also argue for abatement of interest on both their income tax and employment tax liabilities. The

Commissioner is not prevented from seeking interest for the period a taxpayer's bankruptcy proceeding is pending. Sec. 6658(a); see also, e.g., <u>Woodward v. United States</u>, 113 Bankr. 680, 684 (Bankr. D. Or. 1990). Under section 6404(a), the Commissioner is granted the discretion to abate the assessment of any tax or liability that is excessive in amount, assessed after the expiration of the period of limitation, or erroneously assessed. But see sec. 6404(b) ("No claim for abatement shall be filed by a taxpayer in respect of an assessment of any tax imposed under subtitle A or B."). Section 6404(e) authorizes the Commissioner to abate interest assessments that are attributable to errors or delays by the IRS.

Petitioners do not argue that the interest is excessive or was erroneously assessed under section 6404(a). Instead, petitioners argue for abatement of interest because of the delay in the distribution of funds from the bankruptcy. While in certain circumstances interest may be abated because of an unreasonable delay of the Commissioner, respondent was no more in control over the distribution of the bankruptcy proceeds than were petitioners. We find that the delay in the distribution of proceeds by the bankruptcy trustee is not grounds for the abatement of interest under section 6404 or for otherwise relieving petitioners from liability for the interest.

Finally, under docket No. 23547-06L,[5] petitioners challenge respondent's application of the bankruptcy proceeds to the employment tax liabilities of Mr. Salazar instead of the joint tax liabilities of both petitioners.  Because the distribution occurred after the bankruptcy proceeding was closed, and Mr. Salazar raised it during the hearing, we may review this issue.

At the time of the bankruptcy trustee's final report, respondent possessed: (1) A secured claim of $19,915.40 for petitioners' 1997 and 1998 tax liabilities; (2) an unsecured priority claim of $43,673.45 for petitioners' 1999 income tax liabilities and Mr. Salazar's 1998, 1999, 2000, and 2001 employment tax liabilities; and (3) an unsecured general claim of $8,850.74.  However, only payment on respondent's $43,673.45 priority claim was allowed by the bankruptcy trustee.

Respondent applied the $17,834.51 that was ultimately disbursed by the bankruptcy trustee on August 22, 2005, to the employment tax liabilities of Mr. Salazar that made up part of respondent's priority claim.  At first respondent applied the disbursement to the employment tax periods ending December 31, 1998, March 31, 1999, and June 30, 1999, in amounts that exceeded respondent's priority claims for those periods.  Eventually, respondent corrected this application of the proceeds to also

---

[5]The trustee had not filed his final report nor had any disbursements been made at the time of petitioners' collection review hearing with respect to their joint liabilities.

include partial payments on the priority claims for the periods ending September 30, 1999, and December 31, 1999.

Petitioners claim that respondent should have applied the disbursement to petitioners' joint income tax liabilities first instead of just Mr. Salazar's employment tax liabilities.  Where a taxpayer makes voluntary payments to the IRS, he does have the right to direct the application of payments to whatever type of liability he chooses.  See, e.g., Estate of Wilson v. Commissioner, T.C. Memo. 1999-221.  However, where a taxpayer makes an involuntary payment, the IRS may allocate or reallocate the payment as it sees fit, regardless of a taxpayer's designation.  As we have stated:  "An involuntary payment of Federal taxes means any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."  Amos v. Commissioner, 47 T.C. 65, 69 (1966); see also United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1992) (noting that most courts to have considered the issue have concluded that payments made in the bankruptcy context are involuntary).  In the light of the involuntary nature of the bankruptcy distribution, we find no error in respondent's application of the proceeds to the employment tax liabilities of Mr. Salazar before the joint income tax liabilities of both petitioners.  In any event, there is no

evidence that petitioners specified in writing that the proceeds be applied to their income tax liability instead.

On the basis of the record before the Court, and with the exception of the failure to pay penalty for income tax year 1997 which respondent concedes, petitioners are liable for the taxes, additions to tax, and interest as determined by respondent.  We further find that respondent did not abuse his discretion in rejecting petitioners' offers-in-compromise.  Thus, respondent's determination that the Federal tax levies were appropriate in these cases is sustained.

To reflect the foregoing,

Decision in docket No. 2203-05L will be entered under Rule 155.

Decision in docket No. 23547-06L will be entered for respondent.
