**Claude E. SALAZAR, Dana L. Salazar, Petitioner–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

Nos. 08–2670–ag(L), 08–3842–ag(CON).

United States Court of Appeals, Second Circuit.

July 23, 2009.

Dana L. Salazar, pro se, New York, NY, for Appellants.

Melissa Briggs, Tax Division, Department of Justice, Washington, D.C. (Thomas J. Clark, on the brief), for Nathan J. Hochman, Assistant Attorney General, Washington, DC, for Appellee.

Present: GUIDO CALABRESI, ROBERT A. KATZMANN, Circuit Judges, RICHARD K. EATON, Judge.[1]

### SUMMARY ORDER

Appellants Claude E. Salazar and Dana L. Salazar (collectively, "Taxpayers") appeal *pro se* from the Tax Court's decisions entered on February 25, 2008 and June 2, 2008, sustaining the collection by levy of unpaid employment taxes for the calendar quarters ending December 31, 1998, through June 30, 2001, and unpaid personal income taxes for the years 1997, 1998, and 1999. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

Taxpayers jointly operated an art gallery in Nevada that was organized in Mr. Salazar's name as a sole proprietorship. Certain of the gallery's employment taxes were not paid from 1998 to 2001, and the Taxpayers failed to pay their personal income taxes for the years 1997, 1998, and 1999. In January 2001, Taxpayers filed for Chapter 13 protection, which was later converted to a Chapter 7 proceeding. The Internal Revenue Service ("IRS") filed a proof of claim, later amended, in the bank-

---

1. The Honorable Richard K. Eaton of the United States Court of International Trade, sitting by designation.

ruptcy proceeding covering these tax liabilities, to which Taxpayers did not object. Taxpayers received a discharge in July 2002, however, their tax liabilities were non-dischargeable. *See* 11 U.S.C. § 523(a)(1)(A). In August 2005, the bankruptcy trustee disbursed some funds to the IRS, which it applied solely to the employment tax liability.

On October 27, 2003, during the course of the bankruptcy proceeding, the IRS issued a notice of intent to levy for Taxpayers' unpaid income taxes. This notice informed Taxpayers that they had the right to a collection due process ("CDP") hearing with the IRS Appeals Office. Taxpayers asked for a hearing, during which they submitted an offer-in-compromise ("OIC") to the Appeals Office seeking to resolve all outstanding income tax liabilities. Thereafter, having reviewed the IRS Internal Revenue Manual ("IRM"), the Appeals Office rejected Taxpayers' OIC, explaining that accepting it could jeopardize the IRS's ability to collect an additional $20,000 from the Taxpayers' bankruptcy distribution, and noting that Taxpayers had declined to increase their offer by that amount.

On February 22, 2006, the IRS issued an additional notice of intent to levy Mr. Salazar's assets to satisfy the employment tax liability. He likewise asked for a CDP hearing, during which he indicated that he wished the Appeals Office to reconsider its decision not to accept the first OIC. He further objected to the accrual of post-petition interest and to the IRS's decision to apply Taxpayers' joint bankruptcy distribution solely to the employment tax liability. Mr. Salazar then submitted

a second OIC in an effort to settle all of Taxpayers' liabilities. After a hearing, the Appeals Office rejected the second OIC, finding that the IRS's reasonable collection potential far exceeded the amount offered. The Appeals Office then issued a notice of determination sustaining the levy.

Taxpayers filed separate petitions in the Tax Court,[2] which were consolidated. The Tax Court then issued a single Memorandum Findings of Fact and Opinion, although it later entered separate decisions on each petition. In doing so, the Tax Court sustained both levies.

Three primary arguments [3] are raised on appeal: (1) that the Appeals Office erred in rejecting Taxpayers' first OIC; (2) that post-petition interest should not have accrued on tax liabilities that were paid by the distribution of funds from the bankruptcy; and (3) that the Tax Court erred in permitting the IRS to apply the August 2005 bankruptcy distribution solely to the employment tax liability.

We review the Tax Court's decisions *de novo,* and therefore we stand in the shoes of the Tax Court and review the Appeals Office's determinations for abuse of discretion where the underlying liability is not at issue and *de novo* when it is. *See Robinette v. Comm'r,* 439 F.3d 455, 462 (8th Cir.2006); *see also Living Care Alternatives of Utica, Inc. v. United States,* 411 F.3d 621, 625, 628–31 (6th Cir.2005).

█ Taxpayers insist that the Appeals Office's rejection of their OIC, (1) based on Taxpayers' refusal to increase their offer to account for the IRS's possible recovery

---

**2.** Taxpayers originally filed a single joint petition in the Tax Court challenging the Appeals Office's rejection of their first OIC. However, because the employment tax liability was not part of the initial levy, that portion of the petition was dismissed for lack of jurisdiction.

**3.** An additional argument, concerning the IRS's ability to assess statutory penalties during the pendency of Taxpayers' bankruptcy case, has been resolved by the parties.

in bankruptcy; and (2) based on the IRS's reliance on the IRM, was unlawful. These contentions are without merit. As the Tax Court observed, the record reveals that the Appeals Office had a legitimate concern about forfeiting the IRS's right to Taxpayers' bankruptcy distribution and there was nothing improper about it consulting the IRM. *See Salazar v. Comm'r,* T.C. Memo 2008–38, 2008 WL 495313, at *9 ("[The Appeal's Office] was simply applying respondent's guidelines on evaluating offers-in-compromise, including the reasonable collection potential, to the specifics of petitioners' offer."). Further, Taxpayers have made no serious argument as to why the Appeals Office should not consult the IRM. *See Christopher Cross, Inc. v. United States,* 461 F.3d 610, 613 (5th Cir.2006) ("Taxpayer has offered no viable support for its contention that the Officer cannot utilize the guidelines set forth in the Manual when making the discretionary decision to return a submitted offer in compromise."). Thus, because the Appeals Office acted within its discretion and, in fact, consistent with the relevant Treasury regulation, the Tax Court's decision must be affirmed. *See* 26 C.F.R. § 301.7122–1(c)(1)("[T]he decision to accept or reject an offer to compromise ... is left to the discretion of the Secretary."); *see also* 26 U.S.C. § 7122(a) ("The Secretary *may* compromise any civil or criminal case arising under the internal revenue laws .... ") (emphasis added); *Murphy v. Comm'r,* 469 F.3d 27, 32 (1st Cir.2006) ("We will only disturb the rejection of [an] offer-in-compromise if it represents a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS.") (internal quotation marks omitted).

■ Taxpayers next argue for abatement of interest on their tax liabilities because of an alleged delay in distribution of funds by the bankruptcy trustee. As to this claim, the Tax Court noted that the IRS "was no more in control over the distribution of the bankruptcy proceeds than were [Taxpayers]" and held that the IRS was not prohibited from seeking interest for the time period that Taxpayers' bankruptcy proceeding was pending. *See Salazar,* T.C. Memo 2008–38, 2008 WL 495313, at *12 (citations omitted). In reaching its conclusion, the Tax Court relied in part upon *Woodward v. United States,* 113 B.R. 680, 684 (Bankr.D.Or. 1990), in which the court explained that most courts that have considered the issue of whether a debtor remains liable for post-petition interest have found the Supreme Court's decision in *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), controlling.

We, too, believe that *Bruning v. United States,* whatever its full scope may be, precludes these Taxpayers from arguing that post-petition interest could not accrue on non-dischargeable tax liability. *See* 376 U.S. at 360, 84 S.Ct. 906 (explaining that "logic and reason indicate that post-petition interest on a tax claim excepted from discharge ... should be recoverable in a later action against the debtor personally"); *see also In re Johnson Elec. Corp.,* 442 F.2d 281, 284 (2d Cir.1971). Moreover, Taxpayers would have remained liable on their non-dischargeable liability—including interest—even had the IRS not filed a proof of claim in their bankruptcy proceeding. *See* 11 U.S.C. § 523(a)(1)(A). Therefore, we find Taxpayers' claim that the IRS is not entitled to collect post-petition interest to be without merit.

■ Finally, Taxpayers argue that the Tax Court erred in permitting the IRS to apply Taxpayers' bankruptcy distribution to the employment tax liability. Here, we review the Tax Court's conclusion of law *de novo. See Sunik v. Comm'r,* 321 F.3d 335, 337 (2d Cir.2003); 26 U.S.C.

§ 7482(c)(1). Taxpayers claim that the application of the distribution to what they insist is Mr. Salazar's liability alone is unfair. Notwithstanding Taxpayers' fairness concerns, this claim must fail. The payments from Taxpayers' bankruptcy estate were involuntary, and, therefore, Taxpayers had no entitlement to designate where those payments were to be applied. *See United States v. Pepperman,* 976 F.2d 123, 127 (3d Cir.1992) ("Under ... long-standing IRS policy, taxpayers may designate the application of tax payments that are voluntarily made, but may not designate the application of involuntary payments."); *In re Kaplan,* 104 F.3d 589, 596 n. 16 (3d Cir.1997) ("[A] tax payment has been considered 'involuntary' when it is made to agents of the United States as a result of ... levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.") (internal quotation marks omitted). Accordingly, the IRS was free to allocate the funds to Taxpayers' tax liabilities as it saw fit, and it cannot be said to have acted improperly given that the Taxpayers operated the art gallery jointly. *See Davis v. United States,* 961 F.2d 867, 879 (9th Cir.1992) ("Involuntary payments, like undesignated [voluntary] payments, may be credited as the IRS desires."); *see also* Rev. Proc.2002–26, 2002–1 C.B. 746, at § 3.02 (stating that IRS will apply non-designated payments in a manner that will "serve its best interest").

We have considered Taxpayers' remaining arguments and find them to be without merit. Accordingly, the decisions of the Tax Court are hereby **AFFIRMED.**

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder Jr. is automatically substituted for former