T.C. Memo. 2013-62

UNITED STATES TAX COURT

SON GEE WINE & LIQUORS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7618-10L.                    Filed February 27, 2013.

James J. Mahon, for petitioner.

Mimi M. Wong, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  This case is before the Court on a petition for review of a

Notice of Determination Concerning Collection Action(s) Under Section 6320

**[*2]** and/or 6330 (notice of determination).[1] Petitioner seeks review of respondent's determination to proceed with the proposed levies and to sustain the notices of Federal tax lien (NFTLs).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner is a New York corporation. At all relevant times, Joel Goldberg was the president and sole shareholder of petitioner.

At issue are petitioner's employment tax liabilities for the quarters ending:

| Mar. 31 | June 30 | Sept. 30 | Dec. 31 |
| --- | --- | --- | --- |
| 2000 | 2000 | 2000 | 2000 |
| 2002 | 2002 | 2002 | 2002 |
| --- | 2003 | 2003 | 2003 |
| 2004 | 2004 | 2004 | 2004 |
| 2005 | --- | --- | 2005 |

Petitioner was required to file a Form 941, Employer's Quarterly Federal Tax Return, for each of the quarters at issue.[2] Petitioner was a monthly depositor of its

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The Form 941 must be filed on or before the last day of the month

(continued...)

[*3] employment taxes for each of the quarters at issue.[3] Petitioner's bookkeeper, Susan Enfeld, handled its payroll matters.

2000 and 2002 Quarters

For the quarters in 2000 and 2002 petitioner made monthly deposits towards its quarterly employment tax liabilities.[4] However, the Internal Revenue Service (IRS) did not receive timely filed Forms 941 from petitioner for the 2000 and 2002 quarters.[5] The IRS did not receive the forms until April 24, 2009. In five of the eight quarters, petitioner's self-assessed tax exceeded the deposits it made,

---

[2](...continued)
following the close of each calendar quarter; i.e., April 30, July 31, October 31, January 31. Sec. 6011(a); secs. 31.6011(a)-1(a)(1), 31.6011(a)-4, 31.6071(a)-1(a), Employment Tax Regs.

[3] Employment taxes must generally be deposited in an authorized financial institution by employers. Employers are classified by regulation as either monthly depositors or semiweekly depositors. Sec. 31.6302-1(a), Employment Tax Regs. A monthly depositor must make deposits monthly. Sec. 31.6302-1(c)(1), Employment Tax Regs. A semiweekly depositor must make deposits semiweekly. Sec. 31.6302-1(c)(2), Employment Tax Regs.

[4] Not all of the deposits were timely. For example, one of petitioner's deposits for the period ending September 30, 2002, was not made until February 28, 2003.

[5] As discussed infra p. 14, petitioner claims the Forms 941 were timely filed for the 2000 and 2002 quarters.

[*4] resulting in a balance due.[6] For each quarter the IRS assessed petitioner's tax liability as well as interest and additions to tax for failure to timely file and, for the relevant quarters, failure to timely pay tax.

2003 and 2004 Quarters

For the quarters in 2003 and 2004 petitioner did not make monthly deposits towards its employment tax liabilities. The IRS did not receive timely filed Forms 941 from petitioner for the 2003 and 2004 quarters.[7] The IRS received the Form 941 for the quarter ending March 31, 2003,[8] on May 24, 2006, and received the remaining forms on April 24, 2009. For each quarter the IRS assessed petitioner's tax liability as well as interest and additions to tax for failure to timely file and failure to timely pay tax.

2005 Quarters

Only the first and fourth quarters of 2005 are at issue. Petitioner did not make monthly deposits for the first quarter and untimely filed its Form 941 on

---

[6] Petitioner showed a balance due for the quarters ending March 31, June 30, and December 31, 2000, and March 31 and June 30, 2002.

[7] According to Mr. Goldberg, these returns were not timely filed because Ms. Enfeld believed petitioner's bankruptcy attorney had filed these returns when he had not.

[8] This quarter is not in issue.

**[*5]** April 24, 2009.  For each quarter the IRS assessed petitioner's tax liability as well as interest and additions to tax for failure to timely file and failure to timely pay tax.

For the fourth quarter of 2005 petitioner made monthly deposits towards its quarterly employment tax liability and timely filed its Form 941.  However, the IRS assessed an additional tax (quick assessment) against petitioner for the fourth quarter of 2005 because its Forms W-2, Wage and Tax Statement, Forms W-3, Transmittal of Wage and Tax Statements, and Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, for 2005 did not match the sum of the employment tax liabilities shown on the Forms 941 for 2005.

On January 27, 2009, respondent recorded an NFTL against petitioner for a section 6721 civil penalty of $9,877 for the tax period ending December 31, 2005, which was assessed on November 17, 2008.  On May 6, 2009, respondent released the NFTL with respect to the section 6721 civil penalty assessed against petitioner for the tax period ending December 31, 2005.

Petitioner's Bankruptcy Case

On July 6, 2005, petitioner filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.  On August 26, 2005, petitioner moved voluntarily for dismissal of

[*6] its bankruptcy case. On September 1, 2005, the IRS[9] filed a proof of claim in petitioner's bankruptcy case, including an unsecured claim of $109.39 and a priority claim of $54,318.95, for petitioner's unpaid employment tax liabilities, including penalties and interest, for the periods ending (bankruptcy quarters):

| Mar. 31 | June 30 | Sept. 30 | Dec. 31 |
|---------|---------|----------|---------|
| --- | --- | --- | 2000 |
| --- | --- | 2001[1] | --- |
| 2003[1] | 2003 | 2003 | 2003 |
| 2004 | 2004 | 2004 | 2004 |
| 2005 | --- | --- | 2005 |

[1] This quarter is not in issue.

Because petitioner had not yet filed its Forms 941 for the quarters at issue when Ms. Pena was preparing the proof of claim, the IRS had to estimate the amounts of tax due for the quarters listed on the proof of claim. Petitioner did not file an objection to the IRS' proof of claim. Petitioner's bankruptcy case was dismissed on September 26, 2005. Petitioner was represented by counsel during the bankruptcy case. Following the dismissal of the bankruptcy case, on October 3, 2005, petitioner paid the estimated taxes shown on the IRS' proof of claim, except

---

[9] Maria Pena was the bankruptcy specialist assigned to petitioner's bankruptcy case.

**[\*7]** for the estimated taxes for the quarters ending March 31 and December 31, 2005.

Collection Activities

On June 10, 2009, and July 1, 2009, the IRS sent petitioner two Letters 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for petitioner's outstanding employment tax liabilities for the quarters at issue.[10]  On June 25 and July 14, 2009, the IRS sent petitioner three Letters 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, for petitioner's outstanding employment tax liabilities for the quarters at issue.[11]

Petitioner filed two requests for a collection due process hearing (CDP hearing).[12]  On December 21, 2009, Settlement Officer Rogerlyn Jackson of the

[10]  The June 10, 2009, Letter 1058 related to the tax period ending December 31, 2005.  The July 1, 2009, Letter 1058 related to all the remaining quarters at issue.

[11]  The June 25, 2009, Letter 3172 related to the quarter ending December 31, 2005.  The first July 14, 2009, Letter 3172 related to the quarter ending March 31, 2005.  The second July 14, 2009, Letter 3172 related to all the remaining quarters at issue in this case.

[12]  The IRS received the first CDP hearing request on July 8, 2009, when petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, for petitioner's outstanding 941 employment tax liability for the tax period ending December 31, 2005.  In the CDP hearing request petitioner requested a hearing only with respect to the proposed levy; it did not request a
(continued...)

[*8] IRS Office of Appeals (Appeals) sent petitioner a letter scheduling a telephone CDP hearing. The letter stated that in order for Settlement Officer Jackson to consider collection alternatives, petitioner had to submit the requested information and file all required tax returns. Petitioner did not submit the requested information to Officer Jackson or request any collection alternatives.

On January 8, 2010, Settlement Officer Jackson held a telephone conference with Ms. Enfeld, to whom petitioner had granted a power of attorney. During the hearing Ms. Enfeld stated that the liabilities at issue had been paid in full. Following the hearing Settlement Officer Jackson faxed to Ms. Enfeld copies of petitioner's employment tax transcripts for the quarters at issue and requested that Ms. Enfeld provide copies of the checks missing from the transcripts. Ms. Enfeld did not provide Settlement Officer Jackson with any copies of checks. On February 26, 2010, the IRS mailed petitioner a notice of determination sustaining the filing of the NFTLs and the proposed levies.

---

[12](...continued)
hearing with respect to the NFTL. On July 30, 2009, petitioner filed a second Form 12153 requesting a CDP hearing to review the proposed liens and levies for the remaining quarters at issue.

**[*9]**                               OPINION

If a taxpayer requests a hearing in response to an NFTL or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A); see also sec. 6320(c) (requiring that hearings in response to an NFTL be conducted pursuant to section 6330(c), (d) (other than paragraph (2)(B) thereof), (e), and (g)). A taxpayer is precluded from contesting the existence or amount of the underlying tax liability, unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000). The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing Appeals must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy action is appropriate. In making that determination Appeals is required to taken into consideration: (1) verification presented by the Secretary during the hearing process that the

**[*10]** requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed lien or levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by the Appeals Office in connection with the section 6330 hearing. Where the validity of the underlying tax liability is properly at issue, we review the taxpayer's liability de novo. See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 182 (2000). Petitioner has the burden of proof regarding its underlying tax liabilities. See Rule 142(a). Where the underlying tax liability is not properly as issue, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

I. Petitioner's Challenge to the Underlying Tax Liabilities

   A. Petitioner's Ability To Challenge Underlying Liabilities

Section 6330(c)(2)(B) precludes a taxpayer from challenging the existence or amount of the underlying liability unless the taxpayer did not receive a notice of deficiency for that liability or did not otherwise have an opportunity to dispute the

**[\*11]** liability.[13]  Petitioner did not receive a notice of deficiency for its employment tax liabilities with respect to the tax periods at issue.  However, respondent argues that petitioner had the opportunity to dispute the employment tax liabilities for the quarters subject to the proof of claim filed by the IRS in petitioner's bankruptcy proceeding.

Federal bankruptcy courts may consider the amount or legality of taxes, including penalties and interest.  11 U.S.C. sec. 505(a) (2006); Sabath v. Commissioner, T.C. Memo. 2005-222.  Where a taxpayer has filed a bankruptcy action and the Commissioner has submitted a proof of claim for unpaid Federal tax liabilities in that action, we have held that the taxpayer has had the opportunity to dispute the liabilities for purposes of section 6330(c)(2)(B).  See Kendricks v. Commissioner, 124 T.C. 69 (2005); Sabath v. Commissioner, T.C. Memo. 2005-222; see also 11 U.S.C. sec. 502(a) (2006) ("A claim or interest, proof of which is filed * * * is deemed allowed, unless a party in interest * * * objects.").  This is so

---

[13]  In addition, the Court considers an underlying tax liability on review only if the taxpayer properly raised the issue during the CDP hearing.  Sec. 301.6330-1(f), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107, 115 (2007) (holding that the Court does not have jurisdiction to consider sec. 6330(c)(2) issues that were not raised before the Appeals Office).  Respondent argues that petitioner did not properly raise the issue at the CDP hearing.  We disagree.  We find that petitioner properly raised the underlying tax liabilities at the CDP hearing when Ms. Enfeld told Settlement Officer Jackson it was petitioner's position that all its liabilities had been paid.

**[\*12]** even where the taxpayer voluntarily moves for dismissal of his bankruptcy case before a hearing on the underlying liabilities. Kendricks v. Commissioner, 124 T.C. at 77-78.

In petitioner's bankruptcy proceeding, respondent submitted a proof of claim, including an unsecured claim of $109.39 and a priority claim of $54,318.95, for petitioner's unpaid employment tax liabilities for the bankruptcy quarters, including penalties and interest. Petitioner, represented by counsel, did not file an objection to these tax liabilities. Accordingly, petitioner is precluded from challenging the underlying liabilities, including penalties and interest, as submitted by respondent in his proof of claim. See Salazar v. Commissioner, T.C. Memo. 2008-38, aff'd, 338 Fed. Appx. 75 (2d Cir. 2009).

Following the dismissal of petitioner's bankruptcy case on September 26, 2005, respondent assessed additional tax,[14] interest, and penalties on petitioner's unpaid employment tax liabilities arising out of the bankruptcy quarters. Petitioner was not afforded the opportunity to contest these assessments as they were made after the bankruptcy proceedings had closed. Accordingly, we will review these assessments de novo. See Everett Assocs., Inc. v. Commissioner,

---

[14] Respondent assessed additional tax because the self-assessed amounts shown on petitioner's Forms 941 filed on April 24, 2009, were higher than the amounts the IRS estimated for its proof of claim.

**[\*13]** T.C. Memo. 2012-143 (citing Goza v. Commissioner, 114 T.C. at 181-182).

We also review de novo the quarters not subject to the IRS' proof of claim.

    B.  Validity of Underlying Liabilities

Petitioner argues the underlying tax liabilities[15] are incorrect because (1) there is circumstantial evidence that the IRS received timely filed Forms 941 for the 2000 and 2002 quarters and, therefore, petitioner should not be liable for additions to tax for failure to file for those quarters and (2) it satisfied its obligations for the quarters at issue for 2000, 2002, 2003, and 2004 by paying the taxes assessed on the IRS' proof of claim.[16]

---

[15] As discussed above, petitioner cannot dispute the underlying tax liabilities for the amounts shown on the IRS' proof of claim. However, the distinction of what quarters and amounts are subject to de novo review and what quarters are subject to abuse of discretion review is irrelevant since we find petitioner has failed to carry its burden under either standard of review.

[16] Petitioner also argued on brief that the civil penalty for the tax period ending December 31, 2005, should be abated. The IRS released the NTFL with respect to the civil penalty for that period on May 6, 2009. Therefore, the issue is moot.

    At trial Mr. Goldberg disputed the IRS' quick assessment for the quarter ending December 31, 2005. The Court informed Mr. Goldberg that it could not evaluate the quick assessment without petitioner's Forms W-2, Forms W-3, and Form 940 and left the record open for 30 days for petitioner to submit those forms. Petitioner did not submit any additional evidence. Therefore, we find that it has failed to meet its burden of proof with respect to the quick assessment for the quarter ending December 31, 2005.

**[\*14]**      1.  <u>No Circumstantial Evidence Regarding 2000 and 2002 Quarters</u>

Petitioner alleges that it timely filed its Forms 941 for each quarter in 2000 and 2002.  Petitioner's owner, Mr. Goldberg, testified that Ms. Enfeld would prepare the Form 941 at his office, he would sign the form, and then Ms. Enfeld would go to the post office to mail it.  Mr. Goldberg testified he occasionally walked with Ms. Enfeld to the post office but did not go inside to witness Ms. Enfeld mailing the returns.  At trial Mr. Goldberg introduced copies of the Forms 941 which he alleged were timely filed for the 2000 and 2002 quarters.  However, several of these returns are not signed or not dated.[17]  There is no evidence that these returns were actually mailed or received by the IRS.  Petitioner offered no proof of mailing, such as a certified mail or registered mail receipt, and none of the returns petitioner introduced were stamped received by the IRS.

Additionally, petitioner argues that the IRS' proof of claim supports a finding that its Forms 941 for the 2000 and 2002 quarters were timely filed.  The proof of claim covered the last quarter of 2000 and all the quarters in 2003 and 2004.  Because the proof of claim did not cover the first three quarters in 2000 or the quarters in 2002, petitioner argues the IRS must have had the Forms 941 for

---

[17]  Mr. Goldberg testified that Ms. Enfeld would prepare two Forms 941 for each quarter and he did not always sign and date the copy he retained.

[*15] those quarters when it filed its proof of claim. However, Maria Valerio, an insolvency manager for the IRS,[18] credibly testified at trial that a bankruptcy specialist, when preparing a proof of claim, does not have to enumerate all the tax liabilities owed and tax periods for which Forms 941 had not been filed; it is in the bankruptcy specialist's discretion. Thus, we cannot infer from Ms. Pena's decision not to include certain quarters on the proof of claim that the IRS had the Forms 941 for those periods. Petitioner has failed to introduce any credible evidence that the IRS received timely filed Forms 941 for 2000 and 2002.

### 2. Payments Relating to Proof of Claim Did Not Satisfy Liabilities

Petitioner argues that respondent "should be equitably estopped from re-assessing [Form] 941 [employment] taxes for the periods at issue in 2000, 2002, 2003, and 2004 since the 2005 Proof of Claim misrepresented Petitioner's tax liabilities for these periods and Petitioner reasonably relied on these misrepresentations to his detriment." However, respondent did not misrepresent petitioner's tax liabilities.

As discussed above, the bankruptcy specialist has discretion as to what liabilities are included in a proof of claim. Thus, petitioner cannot rely on the fact that the proof of claim did not list all the quarters in 2000 and 2002 to establish

---

[18] Ms. Pena retired from the IRS in 2007 and was unavailable to testify.

**[\*16]** that it did not have any liabilities for those quarters. Moreover, when petitioner paid the amounts shown on the proof of claim, it did not satisfy its liabilities in full for those quarters. The amounts shown on the IRS' proof of claim were necessarily estimated because petitioner had not filed returns for those quarters. When petitioner ultimately filed its Forms 941 on April 24, 2009, the self-assessed amounts shown on the forms were higher than the amounts the IRS estimated for its proof of claim. Thus petitioner's payment of the amounts shown on the IRS' proof of claim did not fully satisfy petitioner's employment tax liabilities for those quarters.

### 3. Additions to Tax

Petitioner bears the burden of proving that respondent's determination to assess the additions to tax is inappropriate.[19] See Rule 142(a)(1).

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed unless such failure is due to reasonable cause and not due to willful neglect. Respondent determined that petitioner was liable for additions to tax for failure to timely file a return under section 6651(a)(1) for all quarters

---

[19] While sec. 7491(c) places a burden of production upon the Commissioner with respect to an individual's liability for an addition tax under sec. 6651(a), sec. 7491(c) has no applicability where, as here, the taxpayer is a corporation. See NT, Inc. v. Commissioner, 126 T.C. 191, 194-195 (2006).

[*17] except the quarter ending December 31, 2005. Petitioner has failed to show it timely filed a return for any of those quarters. Petitioner has not argued that its failure to file was due to reasonable cause and not due to willful neglect. Accordingly, we hold that petitioner is liable for the section 6651(a)(1) addition to tax that respondent imposed.

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown as tax on a return unless such failure is due to reasonable cause and not due to willful neglect. The addition to tax applies to an amount shown on a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). Respondent determined that petitioner was liable for additions to tax for failure to timely pay the tax due for the quarters in which it failed to make timely deposits. Petitioner has failed to show it timely paid the tax for any of those quarters. Petitioner has not argued that its failure to pay was due to reasonable cause and not due to willful neglect. Accordingly, petitioner is liable for the section 6651(a)(2) addition to tax.

II. Collection Action

Having established under a de novo review standard that petitioner's tax liabilities were as respondent determined, we now review under an abuse of discretion standard respondent's determination to proceed with collection.

[*18] Appeals abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner has not advanced any argument or introduced any evidence that would allow us to conclude that the determination to sustain the proposed levies and NFTLs was arbitrary, capricious, or without sound basis in fact or law. Petitioner did not request that Settlement Officer Jackson consider collection alternatives, and it failed to provide the information requested. Appeals determined that the requirements of applicable law and administrative procedure were met and concluded that sustaining the proposed levies and NFTLs appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the lien action. Accordingly, respondent did not abuse his discretion in determining that the collection activity should proceed.

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.